# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ALONZO G. DAVISON, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) NO. CIV-16-0374-HE |
| | ) |
| HECTOR RIOS, JR., Warden, | ) |
| Lawton Correction Facility (LCF), et al., | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Alonzo G. Davison filed this § 1983 action based on alleged violations of his constitutional rights which occurred while he was incarcerated at Lawton Correctional Facility ("LCF"), a privately owned and operated prison under contract with the Oklahoma Department of Corrections ("ODOC"). After multiple rulings, the remaining defendants are GEO, Inc. ("GEO"), the parent company of LCF, and Correct Care Solutions ("CCS"), a private third-party medical care provider for inmates at LCF. Plaintiff's remaining claim is that defendants GEO and CCS violated his Eighth Amendment rights by delaying gallbladder surgery he required.

Consistent with 28 U.S.C. §636(b)(1)(B), (C), the matter was referred for initial proceedings to Magistrate Judge Suzanne Mitchell, who has issued a Report and Recommendation. She recommended that a motion for summary judgment filed by plaintiff be denied and that motions for summary judgment filed by defendants GEO and CCS be granted. Specifically, the magistrate judge concluded that plaintiff failed to demonstrate that defendants' policies "resulted in delaying access to medical care to

inmates with serious medical needs because of financial concerns." Doc. #147, p. 19. She also determined plaintiff's evidence was insufficient to demonstrate that the surgical delay caused him the degree of pain or suffering required to violate the Eighth Amendment. Plaintiff, who initially appeared *pro se* but is now represented by counsel, has filed an objection challenging both the magistrate judge's factual findings and her legal conclusions.

The court concludes that any fact disputes which might exist are not material to the issue of whether defendants had a policy which was the moving force behind the delay in plaintiff's surgery. As a result, defendants are entitled to summary judgment.

## Background

In her Report, the magistrate judge details the medical treatment plaintiff received at LCF which underlies his claim. Briefly summarized, plaintiff was hospitalized at Comanche County Memorial Hospital ("CCMH") in August 2015, after he was seen by a physician at LCF and diagnosed with acute cholecystitis/cholelithiasis.[1] He was discharged to LCF after six days in stable condition with a diagnosis of acute pancreatitis, hyperkalemia, hyponatremia, acute kidney injury, chronic active tobacco use, and cholelithiasis. Plaintiff was "advised that he need[ed] to have his gallbladder removed at some point . . .[but] was told that to it is not an emergency surgery so he can be scheduled electively." Doc. #119-2, p. 1.[2] After plaintiff's hospitalization, between August 23 and

---

[1] Plaintiff had gallbladder inflammation/gallstones in the gallbladder.

[2] Page references to briefs and exhibits are to the CM/ECF document and page number.

October 6, 2015, plaintiff's weight dropped from 213 to 180 pounds, but then it began to increase.[3] During this period plaintiff had varying degrees of pain[4] in his abdomen and experienced mental/emotional pain due to concern about another attack. See Doc. #139-1, p. 3, ¶¶21-22. Plaintiff was, though, seen by the medical staff when he had complaints and he not only was immediately referred for surgery, but the CCS Medical Director, Dr. Sands, approved the referral. The surgery was then postponed because the independent medical providers at CCMH required an ultrasound before they would schedule plaintiff for a surgical consultation.[5] The ultrasound was promptly conducted and the results sent to

---

[3] *By the end of October plaintiff was back to 191 pounds. His weight was 205 pounds in December 2015.*

[4] *Plaintiff complained of moderate to severe pain on August 23, September 1, and September 8, 2015 but denied any pain or discomfort on September 15, 2015. Plaintiff reported abdominal cramping/pain at subsequent appointments, but not the severe pain he experienced in September. The record does not reflect plaintiff complained of significant pain after October. When he underwent a routine chronic clinic examination on December 14, 2015, the registered nurse noted plaintiff reported that day "in no acute distress." Doc. #119-1, p. 30. Rather, he complained of frequent bowel movements, that "his gallstones [were] giving him trouble and he [was] awaiting a surgery date." Id. Plaintiff was seen again at CCS on March 3, 2016, by a nurse regarding complaints about frequent bowel movements, with cramping and accidents, and hypertension. The nurse again noted plaintiff was not in acute distress. Id. at p. 41. She increased his medication and ordered adult diapers.*

[5] *Plaintiff challenges this fact but offers no evidence to contradict the evidence submitted by CCS. See Doc. Nos. 119-3, p. 6,119-5, p. 2, ¶15. The fact that plaintiff had a prior CT Scan and ultrasound of his abdomen while hospitalized is not proof that a second was not required. A fact dispute does exist, as plaintiff points out, as to when the radiologist sent the test results to the surgeon. See plaintiff's objections, pp. 8-9. However, it is immaterial, particularly since plaintiff was told that LCF was still waiting for the radiologist to read the ultrasound when it appears the results had already been sent to the surgeon. In other words, LCF was not holding the results to delay the scheduling of the appointment.*

3

CCMH.[6] The LCF medical staff treated plaintiff's physical and mental issues with medication. He also received intravenous fluids because of dehydration. By the end of October plaintiff's condition had stabilized.[7]

On January 27, 2016, plaintiff was seen by Dr. Means, the surgeon, for a surgical consultation. On the same date, by fax, the surgical group requested authorization from CCS to schedule the surgery. Doc. #139-6.[8] Dr. Sands again approved the surgery on February 1, 2016. Doc. #119-3, p. 8. Dr. Means performed the operation on March 15, 2016.[9] The surgery occurred six months after plaintiff's ultrasound. Whether the delay was due to the surgeon's schedule, the failure of CCS, the medical provider, to monitor the referral "for timeliness of appointment" as required by DOC Policy OP-140121(II)(B)(5), or some other reason, is not apparent from the record.[10]

Analysis

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. Mata

---

[6] *As reflected in the notes from the surgical consultation, the surgeon received the ultrasound "ABD Ultrasound done 09/17/15 . . ." Doc. #119-8, p. 1.*

[7] *See supra notes 3, 4.*

[8] *Contrary to plaintiff's assertion in his objection, the fax does not "show CCMH asked LCF when LCF would schedule and approve the surgery, suggesting that LCF was in control and CCMH was merely waiting on them." Doc. #151, pp. 5-6.*

[9] *The medical records reflect that the surgery was not emergent, was performed without complications, and plaintiff was sent to the recovery room in stable condition.*

[10] *Although plaintiff's surgery was elective, "the referral procedure for Level 2 medically necessary care" is followed." DOC Policy OP-140121(II)(D)3).*

v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005). A deliberate indifference claim has both an objective and a subjective component. *Id*. The objective component is satisfied if the deprivation is sufficiently serious, while the subjective component is met if the plaintiff "present[s] evidence of the prison official's culpable state of mind." *Id*. Liability may be imposed if the official knew the prisoner "faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it." Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999) (internal quotation marks omitted). "[A] delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" Mata, 427 F.3d at 751 (quoting Oxendine v. Kaplan, 241 F. 3d 1272, 1276 (10th Cir. 2001)). Considerable pain, lifelong handicap, or permanent loss may satisfy the substantial harm requirement. *Id*. "A prison medical professional who serves 'solely ... as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'" *Id*. (quoting Sealock v. Colorado, 218 F.3d 1205, 218 (10th Cir. 2000).

Defendants, though private entities, can be treated like a "municipality" for purposes of § 1983 liability. *See* Dubbs v. HeadStart, Inc., 336 F.3d 1194, 1216 (10th Cir. 2003) ("Although the Supreme Court's interpretation of § 1983 in Monell applied to municipal governments and not to private entities acting under color of state law, case law from this and other circuits has extended the Monell doctrine to private § 1983 defendants."); DeVargas v. Mason & Hanger–SilasMason Co., Inc.*,* 844 F.2d 714, 723 (10th Cir.1988) ("Although Monell addressed only the liability of municipalities, the rationale of its holding

5

[that §1983 liability not be imposed vicariously] applies equally to corporate defendants."). This means that they cannot be held vicariously liable, but must have had an unconstitutional policy, practice or custom, which "was the 'direct cause' or 'moving force' behind the constitutional violation[]" that was committed. Dubbs, 336 F.3d at 1215.

Plaintiff contends defendants have unconstitutional policies which "delay medical treatment to inmates like Mr. Davison, amounting to deliberate indifference under the Eighth Amendment." Doc. #151, p. 14.[11] He asserts that because of the delayed surgery, he "continues to have serious stomach problems," including stomach pain, irritable bowl syndrome, uncontrollable bowel movements, and digestive problems. Doc. #151, p. 13.

As noted previously, the magistrate judge rejected plaintiff's Eighth Amendment claim essentially on two grounds. First, she disagreed with plaintiff that ODOC OP-140121, the Oklahoma Department of Corrections policy which describes when a prison may refer an offender for medical care to an outside provider, was unconstitutional or affected the scheduling of his surgery. Second, she concluded plaintiff failed to demonstrate the substantial harm required to violate the Eighth Amendment.

The court agrees plaintiff failed to offer sufficient evidence to create a fact question as to whether ODOC OP-140121 or any other CCS/GEO policy or custom was the "'direct cause'" or "'moving force'" behind the surgical delay. Dubbs, 336 F.3d at 1215.[12] Plaintiff

---

[11] *Although defendants are distinct entities, plaintiff does not differentiate between them in his objection. Because of its resolution of the motions, the court finds it unnecessary to distinguish between defendants.*

[12] *In his affidavit plaintiff refers to a comment Dr. Gonzaga allegedly made about financial motivations driving medical decisions, but it is inadmissible hearsay. Adams v. Am. Guarantee &*

makes general statements about defendants' policies and how they are unconstitutional because they "allow essentially a system of referrals that go around in circles internally, delaying medical treatment." Doc. #151, p. 7. However, remarks alone, such as "[i]t is because the policies at issue allow the Utilization Review Committee[13] and those involved in following the policies to take an unnecessary amount of time to treat inmates like Plaintiff Davison," are not enough to get past summary judgment. Plaintiff focuses somewhat on DOC Policy OP-140121 in his objection, but he does not explain how it can reasonably be viewed as unconstitutional on its face.[14] Nor has he offered any evidence that the policy caused repeated constitutional violations. He does not cite to other similar incidents where medical treatment was denied or withheld from LCF prisoners as a cost-saving measure.

The crux of plaintiff's argument appears to be that LCF employees use or manipulate DOC Policy OP-140121 to delay the provision of medical treatment to prisoners. Assuming that is true, it is not enough to hold GEO and CCS liable under §1983. Defendants cannot be held responsible under a theory of respondeat superior. *See* Schneider v. City of Grand Junction Police Dep't, 717 F.3d 760, 770 (10th Cir. 2013) ("The

---

*Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) ("Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because a third party's description of a witness' supposed testimony is not suitable grist for the summary judgment mill.") (internal quotation marks omitted).*

[13] *Referrals for outside specialty care which are "medically acceptable" or "elective" must be approved by the Utilization Review Committee, which is comprised of medical staff.*

[14] *Because plaintiff has not challenged any specific provision of DOC Policy OP-140121, the court finds it unnecessary either to detail or analyze its provisions.*

7

'official policy' requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.") (internal quotation marks omitted). Plaintiff must come forth with some evidence upon which a reasonable jury could conclude that LCF medical personnel were acting in accordance with a policy or custom of GEO or CCS when they used the URC or some provision in DOC Policy OP-140121 to delay an inmate's receipt of needed medical care. *See generally* McGill v. Corr. Healthcare Cos., Inc, 2014 WL 5423271, at *1 (D. Colo. Oct. 24, 2014) (in 1983 action, evidence failed to support a finding that county had a policy, custom or practice of not sending inmates out for emergency medical care based on financial concerns); Schneider, 717 F.3d at 770 ("A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."). As he has failed to do so, defendants are entitled to summary judgment on plaintiff's deliberate indifference claim.

Because of the lack of evidence of the required policy or custom, the court does not have to consider whether plaintiff demonstrated that the delayed surgery resulted in substantial harm, including whether CCS provided plaintiff with "a continuous course of treatment." Doc. #151, p. 10. It is the factual findings the magistrate judge made in conjunction with that determination, which plaintiff attacks in his objection. He claims she relied on certain medical records which specify the wrong location of service, misidentify

two medical providers and misidentify the credentials and gender of a third provider.[15] While perhaps evidence of sloppy record keeping, the discrepancies plaintiff cites are insufficient to demonstrate that the documents themselves are inauthentic.

Plaintiff does not, though, dispute that he received the treatment specified in the documents he challenges.[16] His contention is that the treatment was unnecessary and resulted in his surgery being delayed. Regardless, even if a fact dispute exists regarding the treatment plaintiff received, that would not matter here. That is because, as has been discussed, to recover from defendants for a violation of the Eighth Amendment it is not enough for plaintiff to establish that his surgery was delayed. He must show that it was delayed because of an unconstitutional policy or custom of CCS and GEO.

It was unfortunate that plaintiff had to wait so long for his operation. However, because he failed to present some evidence from which a reasonable jury could conclude that his surgery was delayed as a result of defendants' policy or custom, defendants are entitled to summary judgment on plaintiff's Eighth Amendment deliberate indifference claim.

---

[15] *Plaintiff for the most part does not specify the factual findings to which he objects. Instead he just lists the page numbers of the Report to which he objects, which does not satisfy the requirement of Fed.R.Civ.P. 72(b)(2), as it does not allow the court to focus on the alleged errors. See Objection, Doc. #151, p. 5 (citing Report, Doc. #147, pp. 5-13).*

[16] *Plaintiff states "[t]hat is the documents show, albeit not very clearly, multiple referrals to the surgeon and unnecessary treatments, such as a second ultrasound and chronic care bloodwork [and] multiple referrals to the surgeon even after surgery was approved . . . ." Doc. #151, p. 7.*

9

Accordingly, the court **ADOPTS** Magistrate Judge Mitchell's Report and Recommendation as explained above. Plaintiff's motion for summary judgment [Doc. #93] is **DENIED** and the motions for summary judgment of defendants GEO, Inc. and Correct Care Solutions, [Doc. Nos. 117, 119] are **GRANTED**.

**IT IS SO ORDERED**

Dated this 6th day of July, 2018.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE